_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAR 11 2013

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTOPHER ROLON-GONZALES, SANTIAGO ZAYCO,

Defendants.

CASE NO. MJ13-138

COMPLAINT for VIOLATION

Title 18, United States Code, Sections 1029(a)(3) and 2

BEFORE the Honorable James P. Donohue, United States Magistrate Judge, U.S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

**COUNT 1**
**(Possession of Counterfeit or Unauthorized Access Devices)**

On February 5, ~~2012~~ 2013, at Seattle, within the Western District of Washington, the defendants, CHRISTOPHER ROLON-GONZALES and SANTIAGO ZAYCO, knowingly, and with intent to defraud, possessed fifteen or more counterfeit and unauthorized access devices, to wit: counterfeit credit/debit cards, account numbers, personal identification numbers, and other means of account access that can be used, alone and in conjunction with another access device, to obtain money, goods, services, and any other thing of value, and that can be used to initiate a



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

transfer of funds; said activity affecting interstate and foreign commerce.

All in violation of Title 18, United States Code, Sections 1029(a)(3) and 2.

And the complainant states that this Complaint is based on the following information:

I, John Wurster, being first duly sworn on oath, depose and say:

## I. BACKGROUND

1. I am a Special Agent with the United States Secret Service (USSS) and have been so since June 21, 1999. I am currently assigned to the Seattle Field Office. I am a graduate of the Federal Law Enforcement Training Center located in Glynco, Georgia, and the United States Secret Service, Special Agent Training Program located in Beltsville, Maryland. Prior to my employment with the Secret Service, I served in the United States Army as a Counterintelligence Special Agent. I have a Bachelor of Science Degree from Brenau University. As part of my training with the Secret Service, I have received instruction on the investigation of financial crimes, including credit/debit card fraud, mail and wire fraud, access device fraud and identity theft. I have also completed specialized training in the investigation of electronic crimes involving the use of computers and other electronic devices. In the course of my law enforcement career, I have investigated crimes ranging from the production and passing of counterfeit currency, identity theft, access device fraud, bank fraud and threats made against the President and Vice President of the United States. As part of my duties, I also investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography and material involving the sexual exploitation of minors in violation. I am a member of the Seattle Internet Crimes Against Children Task Force, and work with other federal, state, and local law



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

enforcement personnel in the investigation and prosecution of crimes involving the sexual exploitation of children.

2. This Affidavit is made in support of a complaint for the arrest of CHRISTOPHER ROLON-GONZALES and SANTIAGO ZAYCO, for violations of Title 18, United States Code, Section 1029(a) (Access Device Fraud). The information contained in this Affidavit is based on my own personal knowledge and information provided to me during my participation in this investigation, including information provided by other law enforcement officers and witnesses. This Affidavit is submitted solely for the purpose of establishing probable cause for the charge alleged in this Complaint and does not purport to set forth all of my knowledge of, or investigation into, this case.

## II. INVESTIGATION

3. This case involves a skimming operation in which card data is stolen in Canada and encoded onto white plastic cards. These same cards are then transported into the United States, where they are provided to other suspects who withdraw funds from ATMs in a "cash out" scheme. Early estimates from the victim banks showed $209,210.57 in actual loss was attributed to this group, with over $385,659.31 in attempted loss. I expect that the continuing investigation will uncover additional attempted and actual loss.

### A. Background: Skimming and Skimming Devices

4. Generally speaking, credit/debit card "skimming" is the theft of credit/debit card information used in an otherwise legitimate transaction. Among other techniques, suspects often use a small device (the "skimmer" or "skimming device") to steal data the information, or track data, of an unsuspecting victim's credit/debit card. Skimming devices are often capable of holding data pertaining to hundreds or even thousands of bank cards.



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

5. After stealing card data, suspects will connect the skimming devices to a computer, and then download the victim account data. Typically, suspects will then transfer or "re-code" victim card data onto blank credit/debit card stock, also known as "white plastic." Suspects have also been known to re-code stolen card data onto store gift cards or other credit/debit cards. Virtually any plastic card with a magnetic stripe on the back of the card may be used to re-code victim card data and access funds and/or credit on the victim's account. Given the nature of the activity, skimming necessarily requires use of a computer and other digital devices, including encoding equipment and software and USB devices.

6. Once this process is complete, suspects use the newly made counterfeit cards, sometimes called "white plastic cards," to access victim's accounts at ATM machines or through point-of-sale purchases. Typically, suspects will use victim information to withdraw cash and/or make purchases within a short period of time from the date that the credit/debit card account was "skimmed." In some instances, however, suspects will wait several months before utilizing the stolen data. In either case, however, suspects will typically conduct numerous fraudulent transactions in a short time frame in order to maximize the use of the stolen data before the financial institution or the individual victim account holder recognizes the breach and begins shutting down the compromised accounts.

**B. Evidence of Criminal Activity**

7. This investigation originated on December 9, 2012, when a Boeing Employees Credit Union (BECU) Investigator identified a group of individuals performing cash out fraud at BECU ATMs in and around Seattle. BECU gathered surveillance photos and a list of card numbers being used at BECU ATMs. An examination of the card numbers revealed that they all related to debit cards and accounts at VanCity Credit Union of Vancouver, British Columbia.



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

8. The United States Secret Service (USSS) Vancouver Resident Office contacted VanCity investigators concerning the debit cards used in and around Seattle at the BECU ATMs and it was determined that these cards had been compromised from various coffee shops in Vancouver, to include The Dirty Apron Coffee and multiple Starbucks locations.

9. Following this initial video dump from BECU, it appeared that the same individuals were performing cash outs in Seattle with Canadian debit cards on a regular basis. The cash out dates typically were on weekends, such as the weekends of December 1, 2012; December 9, 2012; January 5, 2013; January 20, 2013; and February 2, 2013. According to the Royal Canadian Mounted Police (RCMP), it has verified at least 11 common points of purchase (and compromise) involved in this investigation, as well as additional suspected points of compromise.

10. On January 5, 2013, the RCMP contacted the USSS Vancouver Resident Office requesting assistance with the investigation of T.G., a Canadian citizen. The Canadian Border Services Agency had intercepted T.G. with 22 "white plastic cards" containing TD Bank data and $12,000.00 at the Douglas Border Crossing. Inside T.G.'s phone was the name "Dennis." According to their intelligence files, "Dennis" was "Dennis Nguyen." They also reported finding several phone numbers for area codes in Washington State.

11. According to border crossing records, Dennis Nguyen made at least eight border crossings from Canada into the United States since November 2012. In each instance he was driving the same 2008 Jeep Cherokee with a British Columbia license plate.

12. On February 5, 2013, the USSS Seattle Field Office was notified that the Royal Bank of Canada (RBC) reported a mass cash out attempt in progress at numerous ATMs in the downtown Seattle area. RBC provided real time data of where the transactions were taking



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

place, which enabled JP Morgan Chase Bank central fraud monitoring to provide a photograph and description of a suspect. Surveillance videos showed the suspect, a Hispanic male with dark, spiked hair, wearing a black jacket and jeans, conducting the cash-outs at various ATMs.

13. A search of the areas near these ATMs was initiated. Detective David Dunn of the Seattle Police Department and USSS Special Agent Bryan Molnar located the suspect at an ATM on 4th Ave in Westlake Park in downtown Seattle. The suspect, identified as Santiago Zayco, was contacted and taken into custody. A search incident to arrest yielded 49 "white plastic cards" and $1,620.00 in cash wrapped around ATM receipts found on Zayco's person. It should be noted the "white plastic cards" had no bank markings or printing on the front or back, just a magnetic strip. A white label was printed on the front of each card with what appeared to be the PIN on it. I know from my training, experience and other investigations that "white plastic cards" are used by skimmers and other types of fraud suspects to encode information and then withdraw money or purchase items.

14. Santiago Zayco was transported to the USSS Seattle Field Office, where he agreed to be interviewed. Agent Molnar read Zayco his Miranda Rights, which Zayco stated he understood. Zayco agreed to speak with law enforcement. Agent Molnar asked Zayco how he had traveled downtown and asked if he was alone. Zayco stated he was alone at the time we contacted him, but his cousin's husband was coming to the area to do cash outs with him. Agent Molnar asked Zayco for consent to search his car and read him a "consent to search" form. Zayco agreed and signed the consent form. Zayco informed Agent Molnar his car was parked underneath the Pacific Place Mall in the parking garage, on the lowest level.

15. USSS Special Agent Malcolm Frederick and I located Zayco's vehicle, where Zayco had described, and initiated the search. Inside Zayco's vehicle, Agent Frederick and I



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

found 169 white plastic credit cards and $6,340.00 in cash wrapped around ATM receipts. While we were searching the car, Agent Frederick observed a male driving a black Mercedes watching us as he slowly drove through the parking garage.

16. Upon completion of the search, I advised Agent Molnar of the results. During subsequent questioning, Agent Molnar asked Zayco about the items found in the car. Zayco admitted the money found in the car was obtained from the illegal cash out scheme and the white plastic cards were provided to him by "Dennis" to do the cash outs. Zayco admitted he used some of the money he obtained from the cash-outs to purchase his vehicle, along with funds left to him by his father. Zayco admitted his actions were stupid but stated he was a poor student and needed money.

17. Santiago Zayco stated the cards found on his person were given to him by "Dennis." Zayco said he would meet with "Dennis" every week or two. Zayco said "Dennis" would give him new cards and Zayco would give "Dennis" the cash he obtained from doing cash-outs with the prior week's cards, along with the corresponding ATM receipts. Zayco said he would be given a portion of the cash from the cash outs as payment. Zayco said he corresponded with "Dennis" by a "burner" cellular telephone that "Dennis" would provide him. Zayco said that phone was in his pocket when we contacted him. Zayco also stated "Dennis" would give him new phones periodically and take the old phones back. Agent Molnar asked Zayco for consent to forensically search the phone. Zayco gave consent and signed a "consent to search" form. The phone was imaged by Detective Chris Hansen of Seattle Police Department as the interview progressed. I know from my training and experience that individuals involved in criminal activities may utilize pre-paid cellular phones due to the anonymity such devices may provide. These phones do not require a contract with a telephone service provider that could be researched



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

for account billing information. Instead, following the initial cash purchase of such a phone at any number of retail stores, these phones may be loaded with minutes and/or days of service via the cash purchase of gift cards associated with the provider of the cell phone. The terms "burner and "burn phone" are related to the ease with which suspects can discard such phones if they believe they may be arrested or "burned."

18. Zayco was shown surveillance videos of himself from prior cash outs. Zayco admitted to performing the cash-outs. He was shown surveillance photos of other people in this group who had been using cards encoded with stolen account information to make cash outs. Zayco identified his cousin's husband, Chris Rolon-Gonzales (Rolon), from a surveillance video of Rolon performing a cash out with a stolen account white plastic card. Zayco stated he and Rolon met a "cousin's cousin" named T.G. (same as above) at a family wedding. T.G. told them he could help them get some money and set up a meeting with a man named "Dennis." Zayco was shown a surveillance photograph of Dennis Nguyen, provided by the USSS Vancouver Resident Office, and Zayco identified Nguyen as the person known to him as "Dennis."

19. While being interviewed, Zayco received multiple phone calls from Chris Rolon, who was supposed to be meeting him to do cash outs. Rolon advised he left the area and was scared because he saw people searching Zayco's vehicle. Zayco arranged a meeting with Rolon in downtown Seattle. Zayco provided law enforcement with a description of Rolon and his vehicle, a black Mercedes. Agent Frederick advised this was the male who had been watching while he and I searched Zayco's car.

20. Upon his arrival to the prearranged meeting location, Chris Rolon was taken into custody. He was transported to the USSS Seattle Field Office, where he agreed to be interviewed. Agent Molnar read Rolon his Miranda Rights. Rolon stated he understood his



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

rights and would speak with law enforcement.

21. Agent Molnar asked Rolon for consent to search his vehicle. Rolon gave written consent to a search of his vehicle. Agent Molnar asked Rolon if there was any contraband in the vehicle. Rolon stated we would find cash in the car. I asked him where he obtained the money, and Rolon admitted it was from doing cash outs. While conducting the search of Rolon's vehicle, USSS Special Agent David Mills and Agent Frederick located $4,760.00 in cash and ATM receipts hidden in a gym bag in the trunk of the car.

22. During the interview, Rolon admitted to doing the cash outs and claimed he met a "cousin's cousin" at a family wedding named T.G. Rolon stated T.G. said he could help Rolon earn some money. T.G. set up a meeting with a man named "Dennis." Rolon was shown a surveillance photograph of Dennis Nguyen, provided by the USSS Vancouver Resident Office, and Rolon identified Nguyen as the person known to him as "Dennis."

23. Rolon stated he and Zayco typically would meet with Nguyen every week or two. Rolon said he and Zayco would share a cell phone in which they would communicate with Nguyen through text messages and calls. Rolon said they typically met was at hotel rooms on the west side of Interstate 5 near Northgate Mall, where Nguyen gave them counterfeit cards. Rolon was shown photographs of other people doing cash-outs. Rolon identified Zayco as well as others.

24. Rolon and Zayco later told agents that Nguyen left a red bag with them, which they provided to Nguyen when he traveled to Washington. Rolon and Zayco provided the bag to USSS. A search of that bag yielded $77,140.00 in cash, 332 white plastic credit cards (most of which had a printed label with the cards' associated PIN numbers printed on it), seven cell phones of the same make and model, a cash counting machine, a credit card magnetic strip encoder, a



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

label printer, label printing software, 12 rolls of white label tape, and miscellaneous supplies. Based upon my training, experience and my examination of the evidence contained in the red bag, I know the credit card magnetic strip encoder, "white plastic cards", label printer and blank labels are used in the production of counterfeit access devices.

25. On February 11, 2013, Dennis Nguyen crossed the border into the United States and traveled to the Seattle area where he had arranged to meet Zayco and Rolon. Nguyen was arrested near Northgate Mall. In his possession was a laptop computer.

26. A forensic analysis of that computer thus far has uncovered over 2,600 credit/debit card numbers on the hard drive. Moreover, USSS has recovered 678 “white plastic cards” and about $89,860 in cash directly related to this investigation. Of those “white plastic cards,” 677 were encoded with account data and are thus counterfeit cards (or “counterfeit access devices,” as defined by federal law), while one card was blank. The investigation remains ongoing.

//

//

//



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## III. CONCLUSION

27. Based on the above facts, I respectfully submit that there is probable cause to believe that CHRISTOPHER ROLON-GONZALES and SANTIAGO ZAYCO did knowingly and intentionally committed the offense of access device fraud, in violation of Title 18, United States Code, Sections 1029(a) and 2.

JOHN WURSTER, Complainant
Special Agent, United States Secret Service

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 11th day of March, 2013.

HON. JAMES P. DONOHUE
United States Magistrate Judge



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970